1  Jeffrey K. Brown, State Bar No. 162957
   jkb@paynefears.com
2  Ray E. Boggess, State Bar No. 260384
   reb@paynefears.com
3  Tyler B. Runge, State Bar No. 310697
   tbr@paynefears.com
4  PAYNE & FEARS LLP
   4 Park Plaza, Suite 1100
5  Irvine, California 92614
   Telephone: (949) 851-1100
6  Facsimile: (949) 851-1212

7  Attorneys for ALBERTSON'S LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL RAZIANO, BRIAN TRAISTER, and CHRIS VALDEZ, on behalf of themselves and all others similarly situated,, <br><br> Plaintiffs, <br><br> v. <br><br> ALBERTSON'S LLC, a Delaware Limited Liability Company; and DOES 1 through 50, Inclusive., <br><br> Defendants. | Case No. 2:19-cv-04373 <br><br> **DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332, 1441, 1446, 1453, AND 1711** |

TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFFS, AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE**, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, 1711, Defendant Albertson's LLC ("Defendant" or "Albertson's") hereby removes this action from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California, on the following grounds:

## I. THE STATE COURT ACTION

1. On or about March 21, 2019, Plaintiffs filed an action titled "*Michael Raziano, Brian Traister, and Chris Valdez, on behalf of themselves and all others similarly situated v. Albertson's LLC, a Delaware Limited Liability Company; and Does 1 through 50, Inclusive*" in the Superior Court of the State of California, County of Los Angeles, Case No. 19STCV09574 (the "State Court Action"). A true and correct copy of the original Complaint, Summons, and Civil Case Cover Sheet that were filed is attached hereto as **Exhibit "A"** as part of the Index of Exhibits. (*See also* Declaration of Ray E. Boggess ("Boggess Decl."), ¶ 2.)

2. Albertson's was served with a copy of Plaintiffs' Complaint and Summons on or about April 18, 2019.

3. On or about March 21, 2019, the Superior Court issued a Notice of Case Assignment – Unlimited Civil Case. A true and correct copy of the Notice of Case Assignment – Unlimited Civil Case is attached hereto as **Exhibit "B"** as part of the Index of Exhibits. (*See also* Boggess Decl., ¶ 3.)

4. On or about March 26, 2019, the Superior Court issued a Minute Order designating the State Court Action Complex. A true and correct copy of the Superior Court's Minute Order is attached hereto as **Exhibit "C"** as part of the Index of Exhibits. (*See also* Boggess Decl., ¶ 4.)

5. On or about March 26, 2019, the Superior Court issued a Class Action Initial Status Conference Order. A true and correct copy of the Class Action Initial Status Conference Order is attached hereto as **Exhibit "D"** as part of the Index of Exhibits. (*See also* Boggess Decl., ¶ 5.)

6. On or about March 26, 2019, the Superior Court filed a Certificate of Mailing for the Minute Order designating the State Court Action Complex and the Class Action Initial Status Conference Order. A true and correct copy of the Certificate of Mailing is attached hereto as **Exhibit "E"** as part of the Index of Exhibits. (*See also* Boggess Decl., ¶ 6.)

7. On or about April 25, 2019, Plaintiffs filed a Proof of Personal Service of Summons and Complaint. A true and correct copy of the Proof of Personal Service of Summons and Complaint is attached hereto as **Exhibit "F"** as part of the Index of Exhibits. (*See also* Boggess Decl., ¶ 7.)

8. These constitute the pleadings, process, and orders, either filed but not served, or filed and served, upon or by Plaintiffs and/or Albertson's in the State Court Action. Exhibits "A" through "F" are attached hereto as part of the Index of Exhibits.

## II. REMOVAL OF THE ENTIRE CLASS ACTION IS PROPER

9. Albertson's is authorized to remove this action to this Court pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453 and 1711 ("CAFA") because Plaintiffs have filed a class action complaint where (1) the defendant (Albertson's) is a citizen of a state different from at least one of the Plaintiffs, (2) more than 100 members make up the proposed class, and (3) the alleged amount in controversy exceeds $5 million.

10. In order for this Court to exercise original jurisdiction over this case, it must find that this case is a "class action." 28 U.S.C. § 1332(d)(2). Under 28

-3-
DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332, 1441, 1446, 1453, AND 1711

U.S.C. § 1332(d), the term "class action" means "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute."

11. Here, there is no dispute that Plaintiffs bring this case as a class action against Albertson's. (*See* Compl. at ¶¶ 1, 21–34.) In their Complaint, Plaintiffs allege that they "bring this action as a Class Action pursuant to California Code of Civil Procedure section 382 on behalf of themselves and other current and former non-exempt transportation drivers of ALBERTSON'S LLC." (Compl., at ¶ 1.) Thus, this case is a "class action" under 28 U.S.C. § 1332(d).

### A. Minimum Diversity Exists Because Plaintiffs Are Citizens of California, Whereas Albertson's Is a Citizen of Idaho and Delaware.

12. In order for this Court to exercise original jurisdiction over this case, it must find that minimum diversity exists amongst the parties. 28 U.S.C. § 1332(d)(2). Minimum diversity exists where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2) – (d)(2)(A).

#### 1. Plaintiffs Are Citizens of the State of California.

13. Plaintiffs Michael Raziano, Brian Traister, and Chris Valdez are residents of the State of California and are employed by Albertson's in Los Angeles County, California. (Compl., ¶¶ 4–6.) *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is his permanent home, where he resides with the intention to remain or to which he intends to return."); *Lew v. Moss*,

797 F.2d 747, 751 (9th Cir. 1986) (explaining that residency creates a rebuttable presumption of domicile for purposes of establishing diversity of citizenship).

## 2. Albertson's Is a Citizen of the States of Idaho and Delaware.

14. In contrast to Plaintiffs, Albertson's is, and at all times relevant to the Complaint was, incorporated in the State of Delaware, and its principal place of business is in Boise, Idaho. (*See* Declaration of Laura A. Donald ("Donald Decl."), ¶ 3.)

15. A limited liability company "is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004).

16. The sole member of Albertson's LLC is Albertsons Companies, Inc. Albertsons Companies, Inc. is a citizen of the States of Delaware and Idaho. (Donald Decl., ¶ 4.)

17. For removal purposes, a corporation is a citizen of both its state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010). Albertsons Companies, Inc. is a corporation and was incorporated in the State of Delaware. (Donald Decl., ¶ 5.) Therefore, under 28 U.S.C. § 1332(c)(1), Albertsons Companies, Inc. is a citizen of the State of Delaware.

18. Albertsons Companies, Inc.'s principal place of business is in the State of Idaho. (Donald Decl., ¶ 5.) 28 U.S.C. § 1332(c); *Hertz Corp.*, 130 S. Ct. at 1192 ("[W]e conclude that the phrase 'principal place of business' refers to the place

where the corporation's high level officers direct, control, and coordinate the corporation's activities"). Albertsons Companies, Inc.'s headquarters and corporate offices, including its principal executive and administrative offices, are located in Boise, Idaho, and have been since before the filing of this lawsuit. (Donald Decl., ¶ 6.) The majority of Albertsons Companies, Inc.'s corporate officers and senior executives who direct, control, and coordinate its operations are also located in its corporate headquarters in Boise, Idaho. (Donald Decl., ¶ 6.) As a result, nearly all of Albertsons Companies, Inc.'s corporate decisions are made in Idaho, including operational, executive, administrative, and policymaking decisions. (Donald Decl., ¶ 6.) *See Breitman v. May Co. California*, 37 F.3d 562, 564 (9th Cir. 1994) (a corporation is a citizen of the state in which its corporate headquarters are located and where its executive and administrative functions are performed).

19. Thus, <u>Albertson's is a citizen of the States of Idaho and Delaware</u>, and was not a citizen of the State of California, when the State Court Action incepted and when this Petition and Notice was filed.

20. While Plaintiffs assert claims against "Doe" defendants who are fictitiously named and not served, they are not joined in this Petition and Notice, and shall be disregarded for the purpose of determining removal jurisdiction. 28 U.S.C. § 1441(b)(1). In determining whether diversity of citizenship exists, only the named defendants are considered. *Newcombe v. Adolf Coors Co*., 157 F.3d 686, 690–91 (9th Cir. 1998) ("28 U.S.C. § 1441(a) explicitly provides that the citizenship of defendants sued under fictitious names shall be disregarded for purposes of removal. As such, the district court was correct in only considering the domicile of the named defendants.").

21. Since <u>Plaintiffs in this case are citizens of California and Albertson's is a citizen of Delaware and Idaho</u>, complete diversity exists between Plaintiffs and Albertson's, and there is minimal diversity for purposes of jurisdiction under CAFA. *See* 28 U.S.C. § 1332(d)(2)(A).

### B. More than 100 Members Make Up the Proposed Classes.

22. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d) if, among the other requirements of section 1332(d), the action involves a putative class of at least 100 persons. *See* 28 U.S.C. § 1332(d)(5)(B). Here, Plaintiffs expressly allege that the Plaintiff Class and Subclasses are "estimated to be in excess of 100 individuals." (Compl. ¶ 30.)

23. The Plaintiff Class is defined in Paragraph 21 of the Complaint as "All non-exempt transportation drivers employed by Defendants in the State of California at any time since the four years preceding the filing of this Complaint."

24. For the four-year period prior to the filing of the Complaint on March 21, 2019, Albertson's employed approximately 237 non-exempt, part-time transportation drivers in the State of California. (Boggess Decl., ¶ 10.)

25. Should Plaintiff's proposed class be certified (which Albertson's opposes), it would consist of more than 100 members. Thus, the exception to CAFA removal under 28 U.S.C. § 1332(d)(5)(B) does not apply.

## C. The Amount in Controversy Exceeds $5 Million.

26. Because this action meets the diversity and numerosity requirements discussed above, this Court has original jurisdiction over this action if "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs . . . ." 28 U.S.C. § 1332(d)(2). "[T]he claims of the individual class members shall be aggregated to determine whether the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6).

27. When a defendant alleges the amount in controversy exceeds the CAFA threshold, the notice to remove need only include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 135 S. Ct. 547, 554 (2014) (holding the district court erroneously remanded to the state court when the defendant had submitted an affidavit in support of his calculation on the amount in controversy); *Clay v. Chobani LLC*, No. 14cv2258 (BEN)(DBH), 2015 WL 4743891, at *3 (S.D. Cal. Aug. 10, 2015).

28. A defendant satisfies the amount in controversy for CAFA when it relies on a reasonable chain of logic based on the allegations of the complaint and sufficient evidence to show that the amount in controversy exceeds $5 million. *See LaCross v. Knight Transp. Inc.*, 775 F. 3d 1200, 1201 (9th Cir. 2015); *Ritenour v. Carrington Mortg. Servs. LLC*, No. SACV 16-02011-CJC (DFMx), 2017 WL 59069, at *2–4 (C.D. Cal. Jan. 5, 2017) (denying motion to remand where defendant "provide[d] detailed calculations [of its in controversy allegations] based primarily on the declaration of [a top executive official]"); *Unutoa v. Interstate Hotels & Resorts, Inc.*, No. 2:14-cv-09809-SVW-PJW, 2015 WL 898512, at *2 (C.D. Cal. Mar. 3, 2015).

29. "[A] removing defendant is not required to go so far as to prove Plaintiff's case for [him] by proving the actual rates of violation." *Gomez v. Michaels Stores, Inc.*, EDCV 15-2328-JGB-DTBx, 2016 WL 738196, at *3 (C.D. Cal. Feb. 22, 2016); *Garcia v. Wal-Mart Stores, Inc.*, No. CV 16-01645-BRO (RAO), 2016 WL 6068104, at *5 (C.D. Cal. Oct. 14, 2016) ("At this stage, a defendant is only required to prove the amount in controversy by a preponderance of the evidence, and in so doing may calculate the amount in controversy based on *reasonable assumptions*."); *Oda v. Gucci Am., Inc.*, No. 2:14-CV-07469-SVW (JPRx), 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (finding that a defendant opposing a motion to remand is "not required to comb through its records to identify and calculate the exact frequency of violations"); *Sanchez v. The Ritz Carlton*, No. CV 15-3484 PSG (PJWx), 2015 WL 4919972, at *3 (C.D. Cal. Aug. 8, 2015) (citing cases therein). "This is consistent with Congress' intent that CAFA be interpreted expansively." *Ritenour,* 2017 WL 59069, at *4.

30. Albertson's denies Plaintiffs' allegations and that any amount, whether constituting unpaid wages, penalties, or otherwise, is owed to Plaintiffs or other putative class members. Nonetheless, for purposes of this jurisdictional analysis *only*, the amount in controversy based on the allegations in Plaintiffs' Complaint and Albertson's employment data is an estimated **$9,900,00.00**.

      **1. Plaintiffs' Class Claim for Failure to Pay Reporting Time Wages Places at Least $3,600,000 in Controversy.**

31. Plaintiffs allege in their First Cause of Action that Albertson's failed to comply with the reporting time pay requirements of section 5 of IWC Wage Order 9-2001 and California Labor Code section 204. This claim is brought on behalf of the members of the Reporting Time Subclass, defined as "All Plaintiff Class

1  Members who were required to call in each day, but were not put to work and were
2  not furnished at least half of the usual day's work or at least two hours, at their
3  regular rate of pay." (Compl., ¶ 22.)

5  32. Again, Albertson's denies Plaintiffs' allegations and that any amount,
6  whether constituting unpaid wages, penalties, or otherwise, is owed to Plaintiffs or
7  other putative class members. However, for purposes of this jurisdictional analysis
8  *only*, Albertson's relies on Plaintiffs' allegations that such wages or penalties are
9  owed. *See Lewis v. Verizon Commc'ns, Inc.,* 627 F.3d 395, 399 (9th Cir. 2010) ("In
10 determining the amount [in controversy], we first look to the complaint."); *Heejin*
11 *Lim v. Helio, LLC,* No. CV11-9183 PGS (PLAx), 2012 WL 359304, at *2 (C.D.
12 Cal. Feb. 2, 2015) ("The ultimate inquiry is, therefore, what amount is put 'in
13 controversy' by the plaintiff's complaint or other papers, not what defendant will
14 actually owe for the actual number of violations that occurred, if any.")

16 33. Plaintiffs allege that "Plaintiff Valdez and other part-time employees
17 were scheduled for call-in shifts and required to report to work by calling in each
18 day to determine whether they were scheduled to work the following day."
19 (Compl., ¶ 38.) In other words, Plaintiffs allege that part-time employees were
20 required to call in every day (i.e., 7 days per week) to determine whether they were
21 scheduled to work the following day. Based on Plaintiffs' allegations, then, for each
22 part-time driver, reporting time pay penalties would accrue on every day that the
23 driver was not put to work during the period the driver was employed by
24 Albertson's.

26 34. Based on Albertson's data for the four-year period before the filing of
27 the Complaint for all of Albertson's non-exempt, part-time transportation drivers in
28 the State of California, counsel has determined the total number of days each

-10-
DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332, 1441, 1446, 1453, AND 1711

1 employed part-time driver did not work during the driver's employment with
2 Albertson's. (Boggess Decl., ¶ 11.)

4     35.    Counsel identified (1) the first date that each part-time driver worked
5 during the putative class period and (2) the last date that each part-time driver
6 worked during the putative class period. Counsel then determined the total number
7 of potential workdays between those two dates (the first date worked and the last
8 date worked). (Boggess Decl., ¶ 12.)

10     36.    From each part-time driver's total number of potential workdays,
11 counsel subtracted the dates each part-time driver actually worked, which yields the
12 total number of days that each part-time driver allegedly called into work, but was
13 not put to work during the putative class period. In other words, the difference
14 between the total number of days worked (i.e., the number of days each driver was
15 called in) and the total number of workdays available to each part-time driver
16 produces a reasonable estimate of the number of days on which the part-time driver
17 was required to call in but was *not* put to work, according to Plaintiffs' theory and
18 the facts alleged in the Complaint. (Boggess Decl., ¶ 13.)

20     37.    From Albertson's data, counsel determined that part-time drivers
21 typically worked shifts of 8 hours during the putative class period. Under section 5
22 of the applicable Wage Order, an employee is entitled to reporting time wages equal
23 to "half of [the] employee's usual or scheduled day's work" if the employee reports
24 to work, but is not put to work. Thus, according to Plaintiffs' allegations, part-time
25 drivers would be entitled to 4 hours of pay (half of their usual shift), every day that
26 they call in, but are not put to work. (Boggess Decl., ¶ 14.)

PAYNE & FEARS LLP
ATTORNEYS AT LAW
4 PARK PLAZA, SUITE 1100
IRVINE, CALIFORNIA 92614
(949) 851-1100

-11-
DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332, 1441, 1446, 1453, AND 1711

38. Multiplying each part-time driver's applicable hourly payrate by 4 hours yields the reporting time wages allegedly due for every day that each part-time driver was not put to work. Then, multiplying that number by the total number of days that each part-time driver was allegedly called into work, but was not put to work during the putative class period yields an estimate of the amount of reporting time wages that Plaintiffs seek through their First Cause of Action. (Boggess Decl., ¶ 15.)

39. The sum total of the reasonable estimates of the reporting time pay that Plaintiffs allege is owed to each individual part-time driver is approximately $3,600,000. (Boggess Decl., ¶ 16.)

### 2. Plaintiffs' Class Claim for Failure to Provide Accurate Itemized Wage Statements Places at Least $3,600,000 in Controversy.

40. In their Fourth Cause of Action, Plaintiffs allege that Albertson's failed to provide members of the Plaintiff Class with accurate itemized wage statements, in violation of California Labor Code section 226 and section 7 of IWC Wage Orders 7-2001 and 9-2001.

41. Albertson's denies Plaintiffs' allegations and that any amount, whether constituting unpaid wages, penalties, or otherwise, is owed to Plaintiffs or other putative class members. However, for purposes of this jurisdictional analysis *only*, Albertson's relies on Plaintiffs' allegations that such wages or penalties are owed. *See Lewis v. Verizon Commc'ns, Inc.,* 627 F.3d 395, 399 (9th Cir. 2010) ("In determining the amount [in controversy], we first look to the complaint."); *Heejin Lim v. Helio, LLC,* No. CV11-9183 PGS (PLAx), 2012 WL 359304, at *2 (C.D.

-12-

Cal. Feb. 2, 2015) ("The ultimate inquiry is, therefore, what amount is put 'in controversy' by the plaintiff's complaint or other papers, not what defendant will actually owe for the actual number of violations that occurred, if any.")

42. For the Plaintiff Class employees who were allegedly not provided accurate wage statements each pay period, the amount in controversy for alleged penalties is calculated based on a 100% assumed violation rate per pay period. *Ritenour*, 2017 WL 59069 at *3 (complaint that simply alleged that defendants "failed to provide Plaintiffs and other class members complete and accurate wage statements" made it reasonable for court to assume a 100% violation rate); *Moppin v. Los Robles Reg'l Med. Ctr.*, No. EDCV 15-1551 JGB (DTBx), 2015 WL 5618872, at *4 (C.D. Cal. Sept. 24, 2015) (allegation in complaint "*at all times*" supported 100% violation rate for calculation of amount of Labor Code section 226 penalties); *Mejia v. DHL Express (USA), Inc.*, No. CV 15-890-GHK (JCx), 2015 WL 2452755, at *4–5 (C.D. Cal. May 21, 2015) (finding that allegations that defendant "adopted and maintained uniform policies, practices and procedures" that caused labor law violations sufficient to support 100% alleged violation rate for section 226 claim).

43. An employee suffering an injury as a result of a knowing and intentional failure to comply with Labor Code section 226(a) is entitled to "recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." Cal. Lab. Code § 226(e)(1).

44. Plaintiffs also allege entitlement to penalties under Labor Code section 226.3, which provides for "a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction statement or fails to keep the records required in subdivision (a) of Section 226." Cal Lab. Code § 226.3. (Compl., ¶¶ 64, 66, Prayer ¶ 7.)

45. Based on Albertson's data for the one-year period[1] before the filing of the Complaint (March 21, 2018 through May 16, 2019) for all of Albertson's non-exempt, part-time transportation drivers in the State of California, counsel identified each pay period worked by each individual employee (by employee identification number). (Boggess Decl., ¶ 17.)

46. For penalties under section 226(e), counsel applied a $50.00 penalty to the first pay period worked by each individual employee during the relevant time period, and a $100.00 penalty to each subsequent pay period worked by each employee. For any employee for whom the aggregate penalty exceeded $4,000, a $4,000 cap was instated. The sum total of these penalties is approximately $297,350.00. *See Phan v. Sears, Roebuck & Co.*, No. 5:15-cv-02582-ODW (KK), 2016 WL 1408057, at *2 (C.D. Cal. Apr. 11, 2016). (Boggess Decl., ¶ 18.)

---

[1] The statute of limitations for an action upon a statute for a penalty is one year. *See* Cal. Civ. Proc. Code § 340(a), which applies to a Labor Code section 226 claim. *See Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1118, n.16 (2007) (noting that a "claim for itemized wage statement violations . . . [is] undisputedly governed by a one-year statute of limitations"); *Zimmerman v. Comcast, Corp.*, No. 2:15-cv-08224-ODW (SSx), 2016 WL 6892134, *9 (C.D. Cal. Nov. 22, 2016) (same; citing to *Murphy*).

47. For penalties under section 226.3, counsel applied a $250.00 penalty to the first pay period worked by each individual employee during the relevant time period, and a $1,000.00 penalty to each subsequent pay period worked by each employee. The sum total of these penalties is $3,365,500.00. *See Flores v. Marriott Resorts Hosp. Corp.*, No. CV 18-8012 JVS (JPRx), 2019 WL 1069528, at *4–5 (C.D. Cal. Jan 7, 2019). (Boggess Decl., ¶ 19.)

48. Thus, the combined amount in controversy on Plaintiffs' wage statement claim is $3,662,850. (Boggess Decl., ¶ 20.)

### 3. **Plaintiffs' Class Claim for Failure to Timely Pay Wages Due During Employment Places at Least $679,200 in Controversy.**

49. In their Fifth Cause of Action, Plaintiffs allege that Albertson's failed to timely pay members of the Plaintiff Class all wages owed during employment, in violation of California Labor Code sections 204(a) and 1198, and section 4 of IWC Wage Orders 7-2001 and 9-2001.

50. Albertson's denies Plaintiffs' allegations and that any amount, whether constituting unpaid wages, penalties, or otherwise, is owed to Plaintiffs or other putative class members. However, for purposes of this jurisdictional analysis *only*, Albertson's relies on Plaintiffs' allegations that such wages or penalties are owed. *See Lewis v. Verizon Commc'ns, Inc.,* 627 F.3d 395, 399 (9th Cir. 2010) ("In determining the amount [in controversy], we first look to the complaint."); *Heejin Lim v. Helio, LLC,* No. CV11-9183 PGS (PLAx), 2012 WL 359304, at *2 (C.D. Cal. Feb. 2, 2015) ("The ultimate inquiry is, therefore, what amount is put 'in

controversy' by the plaintiff's complaint or other papers, not what defendant will actually owe for the actual number of violations that occurred, if any.")

51. Plaintiffs allege entitlement to penalties under Labor Code section 210 for Albertson's alleged failure to timely pay wages due during employment. (Compl., ¶¶ 70, 74, Prayer, ¶7.) Labor Code section 210(a) provides: "In addition to, and entirely independent and apart from, any other penalty provided in this article, every person who fails to pay the wages of each employee as provided in Sections 201.3, 204, 204b, 204.1, 204.2, 205, 205.5, and 1197.5, shall be subject to a civil penalty as follows: (1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee. (2) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld."

52. Albertson's data reflects that, during the one-year period[2] before the filing of the Complaint, Albertson's non-exempt, part-time transportation drivers in the State of California worked approximately 3,457 pay periods. (Boggess Decl., ¶ 21.)

53. It is reasonable to assume a 100% rate of violation because Plaintiffs' claim for untimely paid wages is derivative of their other wage claims, including their reporting time pay claim, which assumes violations each pay period. (Compl., ¶ 72.)

---

[2] The statute of limitations for an action upon a statute for a penalty is one year. *See* Cal. Civ. Proc. Code § 340(a).

54. For penalties under section 210, counsel applied a $100.00 penalty to the first pay period worked by each individual employee during the relevant time period, and a $200.00 penalty to each subsequent pay period worked by each employee. The sum total of these penalties is approximately $679,200 (which does not include the increase of 25% of the wages Plaintiffs claim were unlawfully withheld). (Boggess Decl., ¶ 22.)

### 4. Potential Statutory Attorneys' Fees at the Rate of 25% Must also Be Considered in Calculating the Amount in Controversy.

55. Using the under-inclusive, conservatively-calculated numbers described above, the total amount in controversy based on Plaintiffs' First, Fourth, and Fifth Causes of Action is $7,942,050. This amount even ignores Plaintiffs' claims in their Second Cause of Action (failure to reimburse business expenses), Third Cause of Action (denial of right to use sick leave), Sixth Cause of Action (failure to timely pay wages upon termination), Seventh Cause of Action (violation of the unfair competition law), Eighth Cause of Action (invasion of privacy), and Ninth Cause of Action (failure to provide paid sick leave in compliance with the San Diego and Los Angeles paid sick leave ordinances).

56. Although unnecessary because the amount in controversy can be established by reference to the alleged Labor Code violations discussed above, courts also take into consideration the amount of potential exposure to the defendant in statutory attorneys' fees, using a reasonable percentage of an additional 25% of damages. *Salcido*, 2016 WL 79381, at *8; *Oda*, 2015 WL 93335, at *5; *Rickwalt v. Direct Reconditioning, LLC*, No. 15-cv-01190-TLN-AC, 2015 WL 7750640, at *8 (E.D. Cal. Dec. 2, 2015).

57. Thus, an additional $1,985,512 in potential attorneys' fees – calculated based on the under-inclusive $7,942,050 number – could realistically add to the amount in controversy.

58. Based on the foregoing, the amount in controversy requirement under 28 U.S.C. § 1332(d) is met because, based on the allegations in the Complaint, Plaintiffs are seeking to recover more than $5,000,000.00 from Albertson's.

## III. REMOVAL IS TIMELY

59. Pursuant to 28 U.S.C. § 1446(b), this case is being removed within thirty days of the time when Albertson's first became aware that it was removable. *See* 18 U.S.C. § 1446(b) ("[A] notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."). In this case, the time for removal started on April 18, 2019 – the date the Complaint was served on Albertson's.

60. Accordingly, removal of the action within thirty days of Albertson's being served with the Complaint in the State Court Action is timely. *See* Fed. R. Civ. P. 6(a)(1)(C).

## IV. ASSIGNMENT TO THE CENTRAL DISTRICT, WESTERN DIVISION IS PROPER

61. The United States District Court for the Central District of California, Western Division is the federal judicial district and division in which the Los

1  Angeles County Superior Court sits.  This action was originally filed in Los Angeles
2  County Superior Court, rendering venue in this federal judicial district and division
3  proper.  28 U.S.C. § 84(c)(2); *see also* 28 U.S.C. §§ 1441(a), 1446(a).

5      62.    Upon filing the Notice of Removal, Albertson's will furnish written
6  notice to Plaintiffs' counsel, and will file and serve a copy of this Notice with the
7  Clerk of the Los Angeles County Superior Court, pursuant to 28 U.S.C. § 1446(d).

9      WHEREFORE, Albertson's LLC hereby respectfully removes this action
10 from the Superior Court of California in and for the County of Los Angeles to this
11 United States District Court.

13 DATED: May 20, 2019        PAYNE & FEARS LLP
                                            Attorneys at Law

                                            By:    */s/ Jeffrey K. Brown*
                                                      JEFFREY K. BROWN
                                                        RAY E. BOGGESS
                                                        TYLER B. RUNGE

                                            Attorneys for ALBERTSON'S LLC

Left margin: PAYNE & FEARS LLP / ATTORNEYS AT LAW / 4 PARK PLAZA, SUITE 1100 / IRVINE, CALIFORNIA 92614 / (949) 851-1100

# INDEX OF EXHIBITS

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| "A" | Class Action Complaint, Summons, and Civil Case Cover Sheet filed in *Michael Raziano, Brian Traister, and Chris Valdez, on behalf of themselves and all others similarly situated v. Albertson's LLC a Delaware Limited Liability Company; and Does 1 through 50, Inclusive*, Case No. 19STCV09574. |
| "B" | Notice of Case Assignment – Unlimited Civil Case. |
| "C" | Minute Order designating the State Court Action Complex. |
| "D" | Class Action Initial Status Conference Order. |
| "E" | Certificating of Mailing for the Minute Order designating the State Court Action Complex and the Class Action Initial Status Conference Order. |
| "F" | Proof of Personal Service of Summons and Complaint. |

4813-8376-6935.1

-20-
DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §§ 1332, 1441, 1446, 1453, AND 1711