**COHELAN KHOURY & SINGER**
Michael D. Singer (SBN 115301)
msinger@ckslaw.com
Marta Manus (SBN 260132)
mmanus@ckslaw.com
605 C Street, Suite 200
San Diego, CA 92101
Telephone: (619) 595-3001/Facsimile: (619) 595-3000

**THE CARTER LAW FIRM**
Roger Carter (SBN 140196)
roger@carterlawfirm.net
23 Corporate Plaza Drive, Suite 150
Newport Beach, CA 92660
Telephone: (949) 245-7500/Facsimile: (949) 629-2501

**THE PHELPS LAW GROUP**
Marc H. Phelps (SBN 237036)
Marc@phelpslawgroup.com
23 Corporate Plaza Drive, Suite 150
Newport Beach, CA 92660
Telephone: (949) 629-2533/Facsimile: (949) 629-2501

Attorneys for Plaintiffs MICHAEL RAZIANO, BRIAN TRAISTER, and CHRIS VALDEZ, on behalf of themselves and all others similarly situated

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| MICHAEL RAZIANO, BRIAN TRAISTER, and CHRIS VALDEZ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>ALBERTSON'S, LLC, a Delaware Limited Liability Company; and DOES 1 through 50, Inclusive,<br><br>Defendants. | Case No. 19-CV-04373 JAK (ASx)<br><br>**CLASS ACTION**<br>**PLAINTIFFS' PROPOSED TRIAL PLAN IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date:       July 13, 2020<br>Time:      8:30 a.m.<br>Judge:     Hon. John A. Kronstadt<br>Ctrm.:      10B<br><br>Complaint filed:   March 21, 2019<br>Trial date:            Not set |

Plaintiffs MICHAEL RAZIANO, BRIAN TRAISTER, and CHRIS VALDEZ ("Plaintiffs"), on behalf of themselves and all others similarly situated, hereby submit the following Proposed Trial Plan in Support of Plaintiffs' Motion for Class Certification.

## I. A MANAGEABLE TRIAL WILL BE BASED ON COMMON POLICY AND PRACTICE EVIDENCE, PAYROLL, TIMEKEEPING, AND POLICY RECORDS

### A. The Prospective Plaintiff Class is Manageable.

"In wage and hour cases where a party seeks class certification based on allegations that the employer consistently imposed a uniform policy or de facto practice on class members, the party must still demonstrate that the illegal effects of this conduct can be proven efficiently and manageably within a class setting." See *Duran v. U.S. Bank Nat'l Assn.*, 59 Cal.4th 1, 26, 29 (2014), citing *Brinker Restaurant Corp. v. Superior Ct.*, 53 Cal.4th 1004, 1033 (2012). As indicated in Plaintiffs' Motion for Class Certification filed concurrently herewith, while the prospective Plaintiff Class is numerous, proof of liability will be based on common evidence of undisputed policies and practices in a manageable trial, providing Defendant Albertson's the full opportunity to present its affirmative defenses. If the trier of fact finds Albertson's liable, Plaintiffs will demonstrate that their damages arose from Albertson's' conduct. See *Vasquez v. Ashley Furniture Indus.,* 824 F.3d 1150, 1154-1155 (9th Cir. 2016) ["Vaquero alleges that Defendants' consciously chosen compensation policy deprived the class members of earnings in violation of California's minimum wage laws. In a wage and hour case, unlike in an antitrust class action, the employer-defendant's actions necessarily caused the class members' injury. Defendant's either paid or did not pay their transportation drivers for work performed. No other actor could have contributed to the alleged injury."].

///

**B. The Evidence and Proof of Liability for Each Subclass is Common.**

*1. Class-Wide Evidence of Albertson's' Liability for the Reporting Time Pay Claim.*

To establish liability for unpaid reporting time pay, Plaintiffs will present the following class-wide evidence: (1) Albertson's' Part-Time Driver Guidelines: Brea Transportation policy (bates labeled "Albertsons 001981"); (2) Albertson's' Irvine Part-Time Driver Daily Call In Procedures and Responsibilities policy (bates labeled "Albertsons 001977" and " Albertsons 001980"); (3) Albertson's' corporate representative testimony regarding applicability of these policies, practices, and requirements that part-time transportation drivers were required to comply with; (4) testimony of Class Members regarding experiences of being required to call into Albertson's each evening to determine whether they are schedule to work the following day; and (5) Albertson's' employment records showing the dates of employment for each part-time driver and the dates they were not scheduled to work to determine the number of eligible days on which reporting time pay is due.

*2. Class-Wide Evidence of Albertson's' Liability for the Unpaid Wages Claim.*

**a.   Unpaid Wages Due for Call-In Scheduling Practices.**

To establish liability for Plaintiffs' unpaid wages claim for Albertson's' failure to pay for the hours worked by part-time drivers calling into the employer to receive their daily schedule, Plaintiffs will present the following class-wide evidence: (1) Albertson's' Part-Time Driver Guidelines: Brea Transportation policy (bates labeled "Albertsons 001981"); (2) Albertson's' Irvine Part-Time Driver Daily Call In Procedures and Responsibilities policy (bates labeled "Albertsons 001977" and "Albertsons 001980"); (3) Albertson's' corporate representative testimony regarding applicability of these policies, practices, and requirements that part-time transportation drivers were required to comply with

and Albertson's' practice of not paying any wages for the hours drivers spend calling into work each day; (4) testimony of Class Members regarding experiences of how often they are required to call in and the estimated amount of time spend doing so; and (5) Albertson's' payroll records showing that it does not pay any wages for the time part-time drivers spend calling into work each evening.

### b. Unpaid Wages Due for Off-The-Clock Hours Worked for Bidding on Delivery Routes.

To establish liability for unpaid wages for the hours worked off-the-clock by all transportation drivers during the 15-minute pre-shift time that drivers are directed to report to work to be allowed to bid on their daily delivery run, Plaintiffs will present the following class-wide evidence: (1) Albertson's' Irvine Driver's Manual policy directing drivers to "[b]e in the Dispatch Office & fit for duty at your scheduled start time, 15-minutes prior to your start time for bidding purposes."; (2) Albertson's' corporate representative testimony regarding applicability of these policies and practices; (3) testimony of Class Members regarding experiences of how often they are required to call in and the estimated amount of time spend doing so; and (4) Albertson's' payroll records showing that it does not pay any wages for the pre-shift 15-minutes time that drivers spend bidding on their routes.

### c. Unpaid Wages Due for Mandatory Security Exit Checks.

To establish liability for the unpaid wages for the hours worked off-the-clock by all Class Members while undergoing mandatory security exit searches, Plaintiffs will present the following class-wide evidence: (1) Albertson's' corporate representative testimony regarding this policy and practice and the fact that the security exit searches are conducted by Albertson's after drivers clock out at the end of each shift; (2) testimony of Class Members regarding the requirement to undergo security exit searches after clocking out at the end of each shift and the average amount of time it takes to do so; and (3) Albertson's' payroll

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1 records for Class Members showing that it does not pay any wages for the post-
2 shift off-the-clock time drivers spend undergoing mandatory security exist
3 searches.

### 3. *Class-Wide Evidence of Albertson's' Liability for the Unreimbursed Business Expenses Claim.*

#### a. <u>Unreimbursed Business Expenses for 24-hour Layovers</u>

To establish liability for the unreimbursed business expenses incurred by Class Members for 24-hour layovers, Plaintiffs will present the following class-wide evidence: (1) Albertson's' Brea California Distribution Center Drivers Long Haul Agreement and Albertson's' Irvine Long Haul Agreement; (2) Albertson's' corporate representative testimony regarding this policy and practice and the fact that Albertson's caps reimbursement for each 24-hour layover at $80.00 irrespective of the actual expenses incurred by the Class Members; (3) Alberton's' reimbursement records showing that it only pays $80.00 per 24-hour layover; (4) Albertson's' Layover Report which notifies the transportation admin when a driver had a layover; and (5) testimony of Class Members corroborating the fact that when they have a 24-hour layover and incur expenses that exceed $80.00, Albertson's does not reimburse for the additional necessarily incurred business expenses.

#### b. <u>Unreimbursed Business Expenses for Cell Phones</u>

To establish liability for the unreimbursed business expenses incurred by Class Members for the use of personal cell phones for business-related purposes, Plaintiffs will present the following class-wide evidence: (1) testimony of Class Members corroborating the fact that they must use their personal cell phone for business-related purposes on a daily basis to perform their essential job duties for Albertson's and the fact that Albertson's does not have a policy or practice to reimburse drivers for this necessarily incurred business expense.

///

### 4. Class-Wide Evidence of Albertson's' Liability for the Paid Sick Leave Claim.

To establish liability for Albertson's' failure to provide paid sick leave in compliance with the local ordinances of Los Angeles and San Diego County, Plaintiffs will present the following class-wide evidence: (1) Albertson's' Brea California Distribution Center Drivers Agreement and Albertson's Irvine Distribution Center Drivers Agreement; (2) Albertson's' corporate representative's testimony regarding the policy and practice to provide paid sick leave of a total of five (5) days per year only after an employees has been continuously employed by Albertson's for the period of at least one (1) year; (3) Alberton's' payroll records for drivers' first year of employment showing that no sick leave was provided by Albertson's until after at least one (1) year of employment; and (4) testimony from Class Members that they did not receive any paid sick leave until after being employment for at least one (1) year with Albertson's.

### 5. Class-Wide Evidence of Albertson's' Liability for Policy to Discipline Drivers for Use of Sick Leave Claim.

To establish liability for Albertson's' practice of disciplining drivers for the use of sick leave when drivers are ill or fatigued, Plaintiffs will present the following class-wide evidence: (1) Albertson's' Irvine Transportation, Garage & Maintenance Employee Attendance Policy and Brea Distribution Teamster Employee Attendance Policy; (2) Albertson's' corporate representative's testimony regarding Albertson's' practice to take corrective action, up to and including discharge, against employees who have repeated absences regardless of the reason; (3) Albertson's' employment records for Class Members of attendance policy violations showing the description of the reason for the absence and the number of attendance disciplinary points given for each absence; and (4) testimony from Class Members stating that they were disciplined and received

attendance points for using sick leave when ill or fatigued.

### 6. Class-Wide Evidence of Albertson's' Liability for the Invasion of Privacy Claim.

To establish liability for Albertson's' invasion of privacy for the use of the Drive-Cam Video monitoring system, Plaintiffs will present the following class-wide evidence: (1) Drive-Cam Letter of Understanding Between Teamsters Local Union No. 952 and Albertsons, LLC; (2) Albertson's' corporate representative's testimony regarding the policy and practice of monitoring class members via the Drive-Cam Video monitoring system; (3) testimony from Class Members regarding their experience with the Drive-Cam Video monitoring system and their knowledge about the audio and visual recording practices; and (4) Albertson's' employment records of write-ups given to drivers for information Albertson's learned from recording Class Members with the Drive-Cam Video system.

### 7. Class-Wide Evidence of Albertson's' Liability for the Wage Statement and Waiting Time Penalties Claims.

Liability for Plaintiffs' derivate claims for inaccurate itemized wage statements and waiting time penalties will be established based on the underlying proof of the substantive claims described above. The penalty amounts are set by statute and are tabulated base don the number of non-compliant wage statements per employee with a maximum penalty of $4,000 per employee and the employee's daily pay for the 30-day waiting time penalty.

### 8. Class-Wide Evidence of Albertson's' Liability for Restitution under the UCL.

Liability under California's Unfair Competition Law ("UCL") will be established based on the wage violations (not penalties), providing an extra year of liability and restitution for unpaid wages for all hours worked, including reporting time pay.

///

### C. Class-Wide Proof of Damages and UCL Restitution.

Unpaid wages damages will be established for approximately 718 class members of the Plaintiff Class (depending on any exclusions) using accounting evidence, reviewing electronic payroll data, the number of workdays worked by Class Members, tabulating the number of shifts worked by Class Members, reviewing the number of layover reports submitted by drivers, and applying the average hourly rate of pay in effect during the class period.

### D. Class-Wide Evidence for the PAGA Civil Penalty Claims.

Though Plaintiffs need not and do not move for class certification of the representative claims under California's Private Attorneys General Act of 2004 ("PAGA"), Labor Code sections 2698, *et seq.*, the proposed trial plan methodology also is manageable for civil penalty claims arising under the PAGA. Albertson's' liability for civil penalties flows directly from liability for the underlying Labor Code claims. PAGA civil penalty claims are subject only to a bench trial, primarily because (a) it is a quasi-administrative action (a *qui tam* type claim) and (b) PAGA civil penalties are subject to judicial discretion under Labor Code section 2699(e).

## II. CONCLUSION

Based on the foregoing, Plaintiffs' proposed trial plan and methodology is manageable and appropriately suited for class-wide resolution of the claims in this case.

Dated: May 4, 2020

COHELAN KHOURY & SINGER
THE CARTER LAW FIRM
THE PHELPS LAW GROUP

By: s/Michael D. Singer
    Michael D. Singer, Esq.
    Marta Manus, Esq.
    Marc H. Phelps, Esq.
Attorneys for Plaintiffs MICHAEL RAZIANO, BRIAN TRAISTER, and CHRIS

VALDEZ, on behalf of themselves and all others similarly situated

- 8 -