**COHELAN KHOURY & SINGER**
Michael D. Singer (SBN 115301)
msinger@ckslaw.com
605 C Street, Suite 200
San Diego, CA 92101
Telephone: (619) 595-3001/Facsimile: (619) 595-3000

**THE CARTER LAW FIRM**
Roger Carter (SBN 140196)
roger@carterlawfirm.net
23 Corporate Plaza Drive, Suite 150
Newport Beach, CA 92660
Telephone: (949) 245-7500/Facsimile: (949) 629-2501

**THE PHELPS LAW GROUP**
Marc H. Phelps (SBN 237036)
Marc@phelpslawgroup.com
23 Corporate Plaza Drive, Suite 150
Newport Beach, CA 92660
Telephone: (949) 629-2533/Facsimile: (949) 629-2501

Attorneys for Plaintiffs MICHAEL RAZIANO, BRIAN TRAISTER, and CHRIS
VALDEZ, on behalf of themselves and all others similarly situated

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| MICHAEL RAZIANO, BRIAN TRAISTER, and CHRIS VALDEZ, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>ALBERTSON'S LLC, a Delaware Limited Liability Company; and DOES 1 through 50, Inclusive,<br><br>          Defendants. | **Case No. 19-CV-04373 JAK (ASx)**<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:          February 8, 2021<br>Time:          8:30 a.m.<br>Judge:         Hon. John A. Kronstadt<br>Ctrm.:          10B<br><br>Complaint filed:   March 21, 2019<br>Trial date:          Not set |

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

# TABLE OF CONTENTS

PAGE(S)

I.    INTRODUCTION ..................................................................................... 1

II.   FACTUAL AND PROCEDURAL HISTORY ........................................ 2

    A.   Complaint and Plaintiffs' Claims........................................... 2

    B.   Discovery and Motion for Class Certification ...................... 4

    C.   Mediation and Settlement ...................................................... 4

    D.   The Proposed Settlement ....................................................... 5

        1.   Composition of the Class........................................... 5

        2.   Consideration. ............................................................ 5

        3.   Release by the Settlement Class. ............................... 7

        4.   Notice, Opting Out, Objecting................................... 7

III.  ARGUMENT ......................................................................................... 8

    A.   The Proposed Class Action Settlement Should Receive
        Preliminary Approval............................................................. 8

        1.   Courts Review Class Action Settlements to Ensure
            That the Terms are Fair, Adequate, and
            Reasonable. ................................................................ 8

        2.   The Proposed Class Meets the Requirements of
            Rule 23 for Settlement Purposes............................... 9

            a.   The Proposed Class is Sufficiently
                Numerous and Ascertainable............................. 9

            b.   There Are Questions of Law and Fact that
                Are Common to the Class ............................... 10

            c.   Plaintiffs' Claims Are Typical of the
                Proposed Settlement Class ............................. 11

            d.   Plaintiffs and Their Counsel Will
                Adequately Represent the  Interests of the
                Proposed Settlement Class ............................. 11

            e.   Common Issues Predominate Over
                Individual Issues............................................. 12

            f.   Class Settlement Is Superior to Other Available
                Means of Resolution....................................... 13

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

3.   The Settlement Was Reached Through Arm's-
Length Bargaining. ......................................................14

a.   The Settlement Was Based on Facts
Uncovered Through Investigation, Formal
Discovery, and Preparation for Mediation ..................14

4.   Counsel Is Experienced In Similar Litigation. .........................16

5.   The Settlement Is Reasonable Considering the
Strengths of Plaintiff's Case and the Risks,
Expense, Complexity, and Likely Duration of
Further Litigation. ......................................................16

B.   The Proposed PAGA Payment Is Reasonable ...................................22

C.   The Proposed Payments To The Class Representatives
Are Reasonable ...................................................................................23

D.   Plaintiff's Counsel's Fees And Costs Are Fair And
Reasonable ...........................................................................................24

E.   The Proposed Class Notice Adequately Informs Class
Members About the Case and Proposed Settlement ..........................24

IV.   CONCLUSION ............................................................................................25

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

# <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

## <u>Cases</u>

*Amchem Prods. v. Windsor*
    521 U.S. 591 (1997) ...........................................................................9, 12, 13

*Bell v. Farmers Ins. Exchange*
    115 Cal. App. 4th 715 (2004)................................................................23

*Berkey Photo, Inc. v. Eastman Kodak Co.*
    603 F.2d 263 (2d Cir. 1979) ...............................................................19, 22

*Boyd v. Bechtel Corp.*
    485 F. Supp. 610 (N.D. Cal. 1979)................................................................21

*Cellphone Termination Fee Cases*
    186 Cal. App. 4th 1380 (2010) ................................................................23

*Consolidated Rail Corp. v. Town of Hyde Park*
    47 F.3d 473(2d Cir. 1995) ...........................................................................9

*Crown, Cork & Seal Co. v. Parker*
    462 U.S. 345 (1983) ...........................................................................13

*Eisen v. Carlisle & Jacqueline*
    417 U.S. 156 (1974) ...........................................................................25

*Erica P. John Fund, Inc. v. Halliburton Co.*
    563 U.S. 804 (2011) ...........................................................................11

*Frank* v. *Eastman Kodak Co.*
    228 F.R.D. 174 (W.D.N.Y. 2005) ................................................................21

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998)................................................................passim

*Hopson v. Hanesbrands Inc.*
    2009 U.S. Dist. LEXIS 33900(N.D. Cal. Apr. 3, 2009) ...............................23

*Ikonen v. Hartz Mountain Corp.*
    122 F.R.D. 258 (S.D. Cal. 1998)................................................................9

*In re Global Crossing Sec. and ERISA Litig.*
    225 F.R.D. 436 (S.D.N.Y. 2004)................................................................22

*In re IKON Office Solutions, Inc. Sec. Litig.*
    194 F.R.D. 166 (E.D. Pa. 2000) ...............................................................22

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- iii -

*In re Janney Montgomery Scott LLC Financial Consultant Litig.*
   2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009) ................................ 23

*In re Michael Milken and Assoc. Sec. Litig.*
   150 F.R.D. 57 (S.D.N.Y. 1993) .................................................................... 21

*In re Netflix Privacy Litig.*
   2013 U.S. Dist. LEXIS 37286 (N.D. Cal. Mar. 18, 2013) ........................... 14

*In re Omnivision Tech., Inc.*
   559 F.Supp.2d 1036 (N.D. Cal. Jan. 9, 2008) .............................................. 21

*In re Pacific Enters. Sec. Litig.*
   47 F.3d 373 (9th Cir. 1995) .......................................................................... 15

*In re Tableware Antitrust Litig.*
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ......................................................... 2

*James v. City of Dallas*
   254 F.3d 551 (5th Cir. 2001) ........................................................................ 10

*Kamar v. RadioShack Corp.*
   2008 U.S. Dist. LEXIS 40581 (C.D. Cal. May 15, 2008) ............................ 17

*Ketchum v. Moses*
   24 Cal. 4th 1122 (2001) ............................................................................... 24

*Krzesniak v. Cendant Corp.*
   2007 U.S. Dist. LEXIS 47518 (N.D. Cal. June 20, 2007) .............................. 9

*Lane v. Facebook, Inc.*
   696 F.3d 811 (9th Cir. 2012) .......................................................................... 9

*Lilly v. Jamba Juice Co.*
   308 F.R.D. 231 (N.D. Cal. 2014) ................................................................. 11

*Linner v. Cellular Alaska P'ship*
   151 F.3d 1234 (9th Cir. 1998) ...................................................................... 14

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
   244 F.3d 1152 (9th Cir. 2001) ...................................................................... 19

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
   221 F.R.D. 523 (C.D. Cal. 2004) ........................................................... 15, 21

*Newman v. Stein*
   464 F. 2d 689 (2d Cir. 1972) ....................................................................... 21

*Nordstrom Com. Cases*
   186 Cal. App. 4th 576 (2010) ....................................................................... 23

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- iv -

*Officers for Justice v. Civil Serv. Comm'n*
    688 F.2d 615 (9th Cir. 1982) ................................................................16, 22

*Ontiveros v. Zamora*
    303 F.R.D. 356 (E.D. Cal. 2014) ...................................................................16

*Rodriguez v. West Pub. Corp.*
    463 F.3d 948 (9th Cir. 2009) ......................................................17, 19, 23

*Stanton v. Boeing Company*
    327 F.3d 938 (9th Cir. 2003) ...........................................................................8

*Stevens v. Safeway, Inc.*
    2008 U.S. Dist. LEXIS 17119 (C.D. Cal. Feb. 25, 2008) ...........................23

*Swanson v. American Consumer Industries*
    415 F.2d 1326 (7th Cir. 1969) ..........................................................................9

*Trans World Airlines, Inc. v. Hughes*
    312 F. Supp. 478 (S.D.N.Y. 1970) ...........................................................20, 22

*Van Vranken v. Atl. Richfield Co.*
    901 F. Supp. 294 (N.D. Cal. 1995) ...............................................................23

*Vasquez v. Coast Valley Roofing, Inc.*
    670 F. Supp. 2d 1114 (E.D. Cal. 2009) ...........................................................9

*Ventura v. New York City Health and Hosp., Inc.*
    125 F.R.D. 595 (S.D.N.Y. 1989) ...................................................................11

*Wal-Mart Stores, Inc. v. Dukes*
    564 U.S. 338 (2011) .................................................................................10, 13

*Ward v. Tilly's, Inc.*
    31 Cal.App.5th 1167 (2019) ...........................................................................17

*West Virginia v. Chas. Pfizer & Co.*
    314 F. Supp. 710 (S.D.N.Y. 1970) ...........................................................19, 22

*Wolin v. Jaguar Land Rover North America, LLC*
    617 F.3d 1168 (2010) ......................................................................................14

## **Statutes**

### **Federal Rules of Civil Procedure**

Rule 23(a) ....................................................................................9, 11, 12

Rule 23(a)(1) ...............................................................................................9

Rule 23(a)(2) .............................................................................................10

Rule 23(a)(3) .............................................................................................11

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Rule 23(a)(4) .................................................................................. 12

Rule 23(b)(3) .................................................................................... 9

Rule 23(c)(2) ............................................................................ 24, 25

Rule 23(e)(1)(A) ............................................................................... 8

Rule 23(e)(2) ................................................................................ 2, 8

## Other Authorities

3 Conte & Newberg, *Newberg on Class Actions*, section 7.20 (4th ed.
    2002) § 11.25 ............................................................................ 8

Manual for Complex Litigation § 21.632 (4th ed. 2004) ...................... 8, 9

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

## I.  INTRODUCTION

This Motion seeks preliminary approval of the parties' proposed $2,500,000 non-reversionary wage and hour class action settlement. Plaintiffs Michael Raziano, Brian Traister[1], and Chris Valdez ("Plaintiffs") and Defendant Albertson's LLC ("Defendants" or "Albertsons") jointly seek preliminary approval of the Settlement Agreement that, if granted, would provide significant monetary relief for approximately 820 current and former Albertsons' truck drivers.

The basic terms of the Settlement provide for the following:

(1)    A Settlement Class defined as:  All non-exempt transportation drivers employed by Albertsons at its Irvine or Brea Distribution Centers at any time from March 21, 2015 through October 13, 2020.

(2)    A Total, Non-Reversionary Settlement Amount of Two Million Five Hundred Thousand Dollars ($2,500,000).  This includes:

(a)    The "Class Recovery" (currently estimated to be $1,514,167), which is the Total Settlement Amount minus the combined total of any attorneys' fees and litigation costs approved by the Court, the amount approved for settlement administration, the approved incentive award to Plaintiffs, and the amount approved to be paid to the State of California under the Private Attorneys General Act. Any Class Member who does not opt-out from the Settlement will be paid from the Class Recovery (Class Members will have checks mailed to them directly and will *not* have to submit a claim form to participate in the Settlement).

An objective evaluation of the Settlement confirms that the relief negotiated on the Class' behalf is fair, reasonable, and valuable. The Parties negotiated the Settlement at arm's length following a full day mediation session under the guidance of, Hon. Ronald M. Sabraw (Ret.), a well-regarded mediator specializing in resolving wage and hour class actions. Further, by settling now, Class Members

---

[1] Class counsel was unable to obtain Mr. Traister's signature on the Settlement Agreement by the motion filing deadline.

1   will not have to wait (possibly years) for relief, nor will they have to bear the risk
2   of class certification being denied or of Defendant prevailing at trial.

3       The Parties respectfully request that the Court grant preliminary approval of
4   this settlement and grant conditional certification of the proposed class for
5   settlement purposes only because, for the reasons discussed herein, it is "fair
6   reasonable, and adequate," Fed. R. Civ. P. Rule 23(e)(2), and it "is the product of
7   serious, informed, non-collusive negotiations, has no obvious deficiencies, does
8   not improperly grant preferential treatment to class representatives or segments of
9   the class, and falls with the range of possible approval." (*In re Tableware*
10  *Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).) The Parties also
11  request that the Court appoint Cohelan Khoury & Singer; the Phelps Law Group;
12  and the Carter Law Firm as counsel for the Class, appoint Plaintiffs as Class
13  Representatives, approve the form of the Notice (Phelps Decl., Ex. 1, Ex. A),
14  authorize the Parties to mail the Notice to the Class Members, and set a final
15  approval hearing.

16  **II.    FACTUAL AND PROCEDURAL HISTORY**

17      **A.    Complaint and Plaintiffs' Claims**

18      This case has been vigorously contested and heavily litigated prior to
19  settlement. Plaintiffs filed this class action on March 21, 2019, in the Los Angeles
20  Superior Court. Defendant removed the lawsuit to this Court. (Dkt. No. 1.)  On
21  July 10, 2019, Plaintiffs filed a first amended complaint ("FAC"). (Dkt. No. 19.)
22  On August 5, 2019, Defendant filed a motion to dismiss several causes of action
23  in the FAC including the first cause of action seeking reporting time pay. (Dkt.
24  No. 21.) At the Court's directive, on January 6, 2020, Plaintiffs' filed a second
25  amended complaint ("SAC") seeking reporting time wages pursuant to Labor
26  Code section 218. (Dkt. No. 38.) Plaintiffs' SAC alleged, among other labor
27  violations, that Albertsons failed to compensate the Class for reporting time and
28  other unpaid pre-shift work. Plaintiffs also brought derivative claims for PAGA

penalties and penalties for failing to pay all wages earned upon termination of employment. (*Id.*) Defendant filed another motion to dismiss the first cause of action in the SAC and Plaintiffs filed a third amended complaint ("TAC") on March 4, 2020, which seeks PAGA civil penalties for failure to pay reporting time pay pursuant to Labor Code section 1199. (Dkt. 47.) Pursuant to stipulation, Plaintiffs filed a fourth amended compliant ("FAC") on April 13, 2020. (Dkt. 52 & 54.) Prior to settling this lawsuit, the Parties fully briefed a motion for Class Certification. (Dkt. 55, 65 &78.)

Defendants operate a nationwide chain of grocery stores. The three named Plaintiffs are currently employed by Albertsons as truck drivers, who deliver product to Albertsons' stores and work out of the distribution centers located in Irvine and Brea, California. Plaintiffs' principal claim arises under the "Reporting Time Pay" provision of applicable Wage Order. Specifically, Plaintiffs allege that Albertsons' call-in scheduling policy, which requires part-time drivers to "report" to work each evening by calling in to determine whether they are scheduled to work the following day, violates California law. (Declaration of Marc H. Phelps ("Phelps Decl."). ¶ ¶ 12-13.)

Plaintiffs believe class certification of their theories is indicated. They contend the call-in procedure was a uniformly-applied policy that presents purely legal issues applied to facts not materially in dispute.

In addition to the reporting time claims, Plaintiffs bring unpaid wages claims, reimbursement of business-expenses claims (cell phone bills as well as expenses incurred by drivers during 24-hour layovers, which Albertsons caps at $80/day, but which drivers often exceed given the realistic cost of a layover. Plaintiffs also assert claims for failure to provide paid sick leave in accordance with the San Diego County and Los Angeles County Paid Sick Leave Ordinances, alleging that although drivers regularly drive within the geographic boundaries of San Diego and Los Angeles Counties, Albertsons fails to comply with the

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 3 -

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1  requirements of these ordinances by failing to provide drivers paid sick leave after

2  the 90th day of employment, as required under both ordinances and in accordance

3  with the accrual rates provided under the ordinances. Plaintiffs also assert a claim

4  for invasion of privacy under the common law tort for intrusion as well as Article

5  1, Section 1 of the California Constitution due to Albertsons' practice of using

6  audio and visual recording via the DriveCam video cameras which were installed

7  in the cab of all trucks in January 2018. (*Id.* at 14-16.)

8  **B.    Discovery and Motion for Class Certification**

9  After this case was transferred to the Central District, the Parties engaged in

10  extensive discovery, including the following: (a) Defendant took the depositions

11  of the three named Plaintiffs; (b) Defendant took the depositions of seven Class

12  Members who had submitted declarations in support of Plaintiffs' Motion for

13  Class Certification; (c) Plaintiffs took the deposition of Defendant's corporate

14  representative concerning a range of topics relevant to the Action; (d) Defendant

15  produced over 2,000 pages of documents in formal discovery; (e) Plaintiffs

16  produced over 600 pages of documents in formal discovery; (f) Defendant

17  obtained 23 declarations of Class Members and 6 declarations of supervisors or

18  managers, which were filed in opposition to Plaintiffs' Motion for Class

19  Certification; (g) Plaintiffs obtained 26 declarations of Class Members, which

20  were filed in support of their Motion for Class Certification; and (h) the Parties

21  jointly engaged in a *Belaire-West* notice procedure that resulted in notice being

22  sent to approximately 738 Class Members. (*Id.* at 18.)

23  Per the Court's scheduling order, the Parties were ordered to participate in

24  mediation no later than March 20, 2020. (Dkt. 39.)

25  **C.    Mediation and Settlement**

26  On March 11, 2020, the Parties attended a full-day, private mediation in

27  Walnut Creek, CA with Hon Ronald M. Sabraw, (Ret.) a well-known and

28  experienced wage and hour class action mediator. Following a full day of

- 4 -

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1  mediation which involved contentious legal argument, considerable progress was

2  made, but the Parties were unable to reach a settlement. (Phelps Decl. ¶21).

3  However, the Parties continued to negotiate and discuss settlement, but also

4  proceeded with the filing and briefing of Plaintiffs' Motion for Class Certification.

5  After that motion had been fully briefed, the Parties, in discussions facilitated by

6  Judge Sabraw, agreed to settle the Action. Judge Sabraw's supervision of the

7  mediation process was useful in managing the expectations of the Parties and

8  providing a neutral analysis of the issues and risks to both sides. (*Id*. at 22.)

### D.     The Proposed Settlement

#### 1.     Composition of the Class.

11  The proposed Settlement Class consists of: all non-exempt transportation

12  drivers employed by Defendant at Defendant's Irvine or Brea Distribution Centers

13  in the State of California at any time from March 21, 2015, and ending on October

14  13, 2020. (Settlement Agreement, ¶2.) According to the latest figures provided by

15  Defendant, the Class consists of approximately 820 current and former employees.

#### 2.     Consideration.

17  The Parties have agreed to settle the underlying class claims in exchange

18  for the Total Settlement Amount of $2,500,000. The Total Settlement Amount

19  includes: (1) settlement payments to participating Class Members; (2) attorneys'

20  fees in the requested amount of $833,333 (one third of the Total Settlement

21  Amount) as well as litigation costs and expenses up to $50,000; (3)

22  Administration Costs currently estimated at $20,000; (4) a $37,500 payment to the

23  LWDA; and (5) Class Representative Enhancement Payments of $15,000 each to

24  Plaintiffs, Michael Raziano, Brian Traister, and Chris Valdez, for their services on

25  behalf of the Settlement Class and for the release of all Class Claims they may

26  have against Defendants arising out of their employment. (*Id*. at ¶¶ 28 & 30.)

27  Subject to the Court approving the Attorneys' Fees and Costs, Claims

28  Administration Costs, the payment to the California Labor and Workforce

- 5 -

Development Agency ("LWDA"), and the requested Class Representative Enhancement Payments, the "Class Recovery" will be available for distribution to Class Members. (*Id*. at ¶ 14.)

The settlement distribution formula provides that Class Members with part time work weeks (with a value of 11 credits) get the benefit of *all* Class Claims, including reporting time pay, and the Class Members with full time work weeks (with a value of 10 credits) do not to receive an additional credit since they were not required to call-in for their schedule. Separated employees also receive some additional compensation (1 credit). (Settlement Agreement ¶ 29(a)(b).) This formula takes into account the defenses asserted by Defendants based on distinctions between the full-time employees and part time employees who are required to "report" to work each evening by calling in to determine whether they are scheduled to work the following day as well as separated employees.

The Administrator will then divide the total payment to the Class Members by the number of credits worked by the entire Class during the Class Period resulting in a value for each Credit. The Administrator will then take the Credit value and multiply it by the number of credits awarded to each Class Member. (*Id*.) Sixty seven percent of Settlement Class Members' recovery will be reported using a 1099 Form and the remaining thirty three percent will be subject to a W-2. (*Id*. at ¶ 29(c).) The number of full time and part time work weeks scheduled will be determined from Defendants' records and Class Members will be advised of their approximate share of the Class Recovery. (*See* proposed Notice, Ex. A to the Settlement Agreement.)

Any uncashed settlement checks will be transmitted by the Settlement Administrator to the unclaimed funds division of the State of California with an identification of each Settlement Class Member and the amount attributable to that Settlement Class Member. (Settlement Agreement ¶ 49.)

///

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

### 3.   Release by the Settlement Class.

In exchange for the Settlement Amount, Plaintiffs and Class Members will agree to release the Released Claims as set forth in the Agreement. (Settlement Agreement, ¶ 52.) The Released Claims are limited to the allegations and causes of action in the operative Complaint and are confined to the period covered by the four-year statute of limitations – from March 21, 2015, through October 13, 2020. (*Id.* at ¶ 6.)

### 4.  Notice, Opting Out, Objecting.

Notice will be provided through direct mail and, subject to Court approval, will be substantially in the form attached to the Settlement as Exhibit A. The Notice describes the nature of the litigation, advises Class Members of the terms of the settlement (including the full release language, the maximum individual recovery, and an explanation of the pro rata distribution formula), informs them that they do not need to take further action to participate, and provides instructions for those who want to opt out or object to the settlement. (*Id.* at Ex. A.)

The Claims Administrator will send the Class Notice by first-class United States mail to the last known address for each Class Member, based on Albertsons records. (*Id.* at ¶ 31.) If any Class Notice is returned as undeliverable and without a forwarding address after the date of the initial mailing, the Claims Administrator will use reasonable and customary efforts to locate a better address, including a skip trace or other search efforts. (*Id.*) If this procedure reveals a new address, the Claims Administrator shall re-mail the Class Notice to the new address. (*Id.*)

Class Members who wish to be excluded from the settlement must mail a letter to the Settlement Administrator stating that the Class Member wants to be excluded from this Action. (*Id.* at ¶ 37.) Class Members who wish to object may do so by following the procedure set forth in the Notice. Class Members who do not object by that procedure will be deemed to have waived his or her objections.

///

- 7 -

### III.   ARGUMENT

#### A.   The Proposed Class Action Settlement Should Receive Preliminary Approval

##### 1.   Courts Review Class Action Settlements to Ensure That the Terms are Fair, Adequate, and Reasonable.

Class action settlements must be approved by the Court, and notice of the settlement must be provided to the class before the action can be dismissed. (Fed. R. Civ. P., Rule 23(e)(1)(A).) To protect absent Class Members' due process rights, approval of class action settlements involves three steps:

1.   Preliminary approval of the proposed settlement, including (if the class has not already been certified) conditional certification of the class for settlement purposes;

2.   Notice to the class providing them an opportunity to exclude themselves; and

3.   A final fairness hearing concerning the fairness, adequacy, and reasonableness of the settlement.

(*See* Fed. R. Civ. P. Rule 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).)

At preliminary approval, the Court first determines whether a class exists. (*Stanton v. Boeing Company*, 327 F.3d 938, 952 (9th Cir. 2003).) Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable." (*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).) The decision to approve or reject a settlement is within the Court's discretion. (*Hanlon*, 150 F.3d at 1026.) The Court evaluates whether the settlement is within the "range of reasonableness," and whether notice to the class and the scheduling of a final approval hearing should be ordered. (*See*, *generally*, 3 Conte & Newberg, *Newberg on Class Actions*, section 7.20 (4th ed. 2002) § 11.25.) "Whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 8 -

1  estimation of the reviewing court." (*Lane v. Facebook, Inc*., 696 F.3d 811, 819

2  (9th Cir. 2012).)

3           **2.    The Proposed Class Meets the Requirements of Rule 23 for
                    Settlement Purposes.**

4      Before granting preliminary approval of the Settlement, the Court should

5  determine that the proposed settlement class meets the requirements of Rule 23.

6  (See *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex

7  Litigation, § 21.632.) An analysis of the requirements of Rule 23(a) and 23(b)(3) –

8  commonly referred to as numerosity, commonality, typicality, adequacy,

9  predominance, and superiority – shows that certification of this proposed

10 settlement class is appropriate.

11          **a. The Proposed Class is Sufficiently Numerous and
                Ascertainable**

12

13     The numerosity requirement is met where "the class is so numerous that

14 joinder of all members is impracticable." (Fed. R. Civ. P. Rule 23(a)(1).)

15 Generally, courts will find a class sufficiently numerous if it consists of 40 or

16 more members. (*Vasquez v. Coast Valley Roofing, Inc*., 670 F. Supp. 2d 1114,

17 1121 (E.D. Cal. 2009) (numerosity is presumed at a level of 40 members);

18 *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)

19 ("numerosity is presumed at a level of 40 members"); *Swanson v. American*

20 *Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (numerosity satisfied

21 with class of 40 individuals); *Ikonen v. Hartz Mountain Corp*., 122 F.R.D. 258,

22 262 (S.D. Cal. 1998) (finding a purported class of forty members sufficient to

23 satisfy numerosity); *Krzesniak v. Cendant Corp*., No. C 05-05156 MEJ, 2007 U.S.

24 Dist. LEXIS 47518, *19 (N.D. Cal. June 20, 2007) ("numerosity may be

25 presumed when the class comprises forty or more members").)

26     Here, the proposed Settlement Class consist of non-exempt transportation

27 drivers employed by Albertsons at its Irvine and Brea Distribution Centers. Based

28 on information produced by Defendants, approximately 820 persons comprise the

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1  Settlement Class.

### b. There Are Questions of Law and Fact that Are Common to the Class

2

3  The commonality preconditions of Rule 23(a)(2) are "construed

4  permissibly." (*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).)

5  The presence of simply one common issue whose resolution will affect all or

6  significant number of the putative class members suffices to satisfy the

7  commonality requirement. (*James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir.

8  2001).) Rule 23(a)(2) commonality requirements are "minimal" and "construed

9  permissibly." (*Hanlon*, 150 F.3d at 1019.) Only "a single common question" is

10  required. (*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).)

11  This case poses a multitude of common class questions capable of class-

12  wide resolution. The unlawful conduct alleged by Plaintiffs is not unique to the

13  named Plaintiffs because other Class Members have been injured by the same

14  course of conduct.

15  Plaintiffs allege multiple common, purportedly unlawful practices that

16  uniformly affected putative class members and the claims in this action derive

17  from the same set of salient facts. Specifically, Plaintiffs allege that Albertsons

18  uniformly fails to pay wages for: reporting time pay and off-the-clock work

19  associated with part-timers calling in to determine if they were required to work

20  the next day; the 15-minute pre-shift time that drivers are required to report to

21  work and bid on routes; and post-shift exit security bag checks times. Furthermore,

22  Plaintiffs allege that Albertsons' sick pay policy fails to provide sick pay to its

23  drivers in accordance with the Los Angeles and San Diego ordinances. Plaintiffs

24  allege that Albertsons has a uniform policy of only providing $80 reimbursement

25  for layovers, and for not providing reimbursement for business related cell phone

26  expenses Lastly, Plaintiffs allege that Albertsons violated drivers' privacy rights

27  using the "DriveCam" to record continuous video and audio footage of them in

28  their trucks, even as it provided them with a different understanding of what was

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

being recorded. The allegations raised by Plaintiffs arise from common questions involving Albertsons' employment practices as applied to its drivers. The common factual questions in this case generate common answers that resolve the claims on behalf of the putative class members. (*Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011) (explaining answers to common class questions should prove elements of the underlying claims); *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 241 (N.D. Cal. 2014).) As such, the proposed classes share sufficient factual and legal commonality.

### c.  Plaintiffs' Claims Are Typical of the Proposed Settlement Class

The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." (Fed. R. Civ. P. Rule 23(a)(3).) Under the rule's permissive standards, representative claims are "typical" if they are reasonably co-extensive with those of absent class members; they need not be substantially identical. (*Hanlon*, 150 F.3d at 1020.) The typicality requirement is satisfied if Plaintiffs' claims arise from the same events or course of conduct that give rise to the claims of other class members and are based on the same legal theory. (*Ventura v. New York City Health and Hosp., Inc.*, 125 F.R.D. 595, 600 (S.D.N.Y. 1989).)

Plaintiffs contend that their claims arise from a common source - Albertsons' uniform policies and practices, which are the same as related to all of the drivers at the Irvine and Brea distribution centers. Furthermore, the claims of Plaintiffs and the putative class are based on identical legal theories. Accordingly, Plaintiffs are typical of the Class Members they seek to represent.

### d.  Plaintiffs and Their Counsel Will Adequately Represent the Interests of the Proposed Settlement Class

Adequacy requirements are established on the basis that the proposed class representative, named Plaintiffs, have no conflict of interest with other Class

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 11 -

Members and are represented by qualified counsel. (*Hanlon*, 150 F.3d at 1020.)

The Rule 23(a) adequacy requirement is met here as Plaintiffs have represented their co-workers with a focus and zeal true to the fiduciary obligation that they have undertaken, preparing and sitting for a full day of deposition, reviewing and revising written discovery as applicable, participating in mediation, and working closely with their attorneys throughout the case. (Michael Raziano Decl., ¶¶ 7-8; and Chris Valdez Decl., ¶¶ 9-10.)

The three firms representing Plaintiffs also satisfy the Rule 23(a)(4) adequacy-of-counsel requirement. (*See Hanlon*, 150 F.3d at 1020 ("will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?").) Class Counsel – Cohelan, Khoury and Singer, the Phelps Law Group and the Carter Law Firm – are experienced class action attorneys who have collectively certified numerous class actions by way of contested motion in state and federal court and have negotiated settlements which were finally approved totaling hundreds of millions of dollars on behalf of hundreds of thousands of class members. Class Counsel vigilantly safeguarded the interests of the class by thoroughly investigating the claims, marshalling considerable resources in preparing this case for mediation, and then settling the claims for valuable consideration despite the serious challenges described above. (Singer Decl., ¶¶ 5-16; Phelps Decl., ¶¶ 5-10; Carter Decl., ¶¶ 2-4, 9-14.)

### e.  Common Issues Predominate Over Individual Issues

The predominance inquiry focuses on the relationship between the common and individual issues, testing whether the proposed classes are sufficiently cohesive to warrant adjudication by representation. (*Amchem Products Inc. v. Windsor*, U.S., 117 S. Ct. 2231, 2231 (1997).) Plaintiffs contend several questions of law and fact are common to the claims and to those of the putative class and provide a justification for handling the dispute on a representative rather than on an individual basis for settlement purposes. Whether Plaintiffs are correct on their

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

legal theories or not, those findings would answer class-wide questions common to all members of the class "in one stroke." (*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).) Class treatment is also the superior method for resolving all claims in this case because a class action would (1) accomplish judicial economy by avoiding multiple suits, and (2) protect the rights of persons who might not be able to present claims on an individual basis. (See generally *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983).) Given the number of Class Members, and resolution of claims it is clear that class treatment is the superior method to resolve the claims in this case.

Likewise, the fact that the Settlement affords all Class Members an equal opportunity to obtain compensation for identical claims via a standardized notice process provides further support for the conclusion that common issues of law and fact predominate and that the claims are amenable to class-wide resolution. (See *Amchem Products, Inc. v. Windsor*, 521 U.S. at 619 (rejecting the Third Circuit's holding that the requirements of Rule 23 "must be satisfied without taking into account the settlement," and finding instead that "settlement is relevant to a class certification.").)

### f. Class Settlement Is Superior to Other Available Means of Resolution

Similarly, there can be little doubt that resolving all Class Members' claims through a single class action is superior to a series of individual lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." (*Hanlon*, 150 F.3d at 1023.) Indeed, the terms of the Settlement negotiated on behalf of the Class demonstrates the advantages of a collective bargaining and resolution process.

Addressing the allegations through a class action is superior to individual

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

litigation or any alternative methods that may exist. This action was filed precisely because Plaintiffs believed those alternatives, such as filing complaints with the Labor Commissioner, would have proven ineffective in addressing the problem on a class-wide basis. Additionally, although the value of the claims is not insignificant, the individual amounts in controversy are not nearly enough to incentivize individual action. (See *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1175 (2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this [superiority] factor weighs in favor of class certification.").) As the class action device provides the superior means to effectively and efficiently resolve this controversy, and as the other requirements of Rule 23 are each satisfied, certification of the Settlement Class proposed by the Parties is appropriate.

### 3. The Settlement Was Reached Through Arm's-Length Bargaining.

The fairness and reasonableness of a settlement agreement is presumed "where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel." (*In re Netflix Privacy Litig.*, 2013 U.S. Dist. LEXIS 37286, *11 (N.D. Cal. Mar. 18, 2013).) Here, the Settlement was reached after contested litigation, ample discovery, fully briefed class certification motion, and a full-day mediation session with a seasoned mediator with broad experience in resolving wage and hour class actions such as this one.

#### a. The Settlement Was Based on Facts Uncovered Through Investigation, Formal Discovery, and Preparation for Mediation

The extent of discovery and the stage of proceedings favors approval of the settlement. This settlement comes after this case was vigorously contested and heavily litigated including multiple motions to dismiss, extensive formal discovery and Class Certification briefing. Thus, "the [P]arties have sufficient information to make an informed decision about settlement." (*Linner v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).)

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Class Counsel thoroughly investigated and researched the claims, potential defenses, and the developing body of law relating to the claims. The investigation entailed the exchange of information pursuant to formal and informal discovery methods, including document requests, and numerous depositions of the parties and percipient witnesses. Defendant has produced statistics regarding the class, including that the Class Period includes approximately 125,000 shifts. (*See* Phelps Decl., ¶¶ 18, 28-30.)

Class Counsel thoroughly engaged in the discovery process and made use of documents and data provided by Defendants to assess Defendants' potential liability as well as the likelihood that the Court would grant class certification on any or all of Plaintiffs' claims. (*Id. at* ¶ 19.) Based on the data and on their own independent investigation and evaluation, Class Counsel believe that this Settlement, including the consideration and the terms set forth in the Settlement Agreement, is fair, reasonable and adequate, and is in the best interest of the Settlement Class. This analysis took into account all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation, various defenses asserted by Defendants, and potential appellate issues. (*Id.* at ¶ 20.)

The experience and views of counsel also favor settlement. Counsel's support is accorded "great weight" because counsel have the greatest familiarity with the facts of the litigation, and thus "are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." (*In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); see also *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").)

Class Counsel has extensive experience in class action litigation, and especially wage and hour class actions. (Singer Decl., ¶¶ 5-10; Phelps Decl., ¶¶ 5-

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 15 -

10; Carter Decl., ¶¶ 9-14.) Plaintiffs' attorneys are well qualified to conduct the proposed litigation and to assess its settlement value. (*Id.*) Based on that experience, Plaintiffs' counsel believe the proposed settlement is fair and adequate to Class Members. (Singer Decl., ¶ 12; Phelps Decl., ¶ 20; Carter Decl., ¶ 11.) This factor, too, weighs in favor of approval. (*Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("The court gives considerable weight to class counsel's opinions regarding the settlement due to counsel's experience and familiarity with the litigation. Counsel's assertion that the settlement is fair, adequate and reasonable is a factor supporting the court's final approval of the agreement.").)

### 4. Counsel Is Experienced In Similar Litigation.

The Parties were represented by experienced counsel throughout the negotiations resulting in this Settlement. Three firms seek to be appointed Class Counsel. Cohelan Khoury & Singer regularly litigates class actions involving California Labor Code claims through certification and on the merits, and has considerable experience settling wage and hour class actions. (Singer Decl., ¶¶ 5-10.) The Carter Law Firm and the Phelps Law Group are also experienced in prosecuting and settling wage and hour class actions. (Phelps Decl., ¶¶ 5-10; Carter Decl., ¶¶ 9-14.) All three firms have the requisite experience to defend the interests of the Class.

### 5. The Settlement Is Reasonable Considering the Strengths of Plaintiff's Case and the Risks, Expense, Complexity, and Likely Duration of Further Litigation.

In assessing the probability and likelihood of success, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." (*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation marks omitted).) There is "no single formula" to be applied, but the court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1  considering Plaintiff's likelihood of recovery. (*Rodriguez v. West Pub. Corp*., 463

2  F.3d 948, 965 (9th Cir. 2009).)

3       Class Counsel evaluated the strengths of both claims and assessed the range

4  of potential outcomes of the litigation at trial, in light of the risks, expense,

5  complexity and ongoing duration of the litigation. Nevertheless, after balancing

6  the relative strengths of Plaintiffs' claims and Defendant's defenses (as set forth in

7  detail below), and taking into account the prospect of an adverse verdict or appeal,

8  Plaintiffs' Counsel determined that the class relief negotiated is fair and

9  reasonable.

10      This is primarily a "reporting time" case, in which plaintiffs contend that

11  being required to call-in for a shift triggers a duty to pay reporting time pay when

12  work was not provided (coupled with a claim for compensable time calling in).

13  Plaintiffs allege that Defendants willfully violated provisions of Labor Code

14  section 218 and section 5 of the applicable IWC wage order by failing to pay part

15  time drivers any wages for reporting time. Defendant engages in scheduling

16  practice sometimes called "call-in scheduling," requiring part-time drivers, to

17  "report" to work each evening by calling in to determine whether they were

18  scheduled to work next day. When not scheduled the next day, drivers are not paid

19  at least two hours pay at their regular rate of pay, or half of the usually-scheduled

20  shift in pay at their regular rate. These on-call shifts burden part-time employees

21  by limiting their time and availability for other activities, yet nonetheless they

22  receive no compensation from Defendant unless they are ultimately called in to

23  work.

24      This type of scheduling practice was directly addressed in *Ward v. Tilly's,

25  Inc*., 31 Cal.App.5th 1167 (2019), which held that on-call scheduling practices,

26  nearly identical to the Defendant's practices in this case, trigger the wage order's

27  reporting time pay requirements. (*Id*. at 1182.) Furthermore, *Kamar v. RadioShack

28  Corp*., 2008 U.S. Dist. LEXIS 40581 (C.D. Cal. May 15, 2008), directly addresses

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 17 -

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1    reporting time wages and clearly articulates the reason reporting time wages are

2    recoverable under Labor Code section 218. "Construed in the context of their

3    history and the Labor Code as a whole, sections 218 and 1194 suggest there is a

4    private right of action to recover split shift premiums and reporting time pay."

5    (*Kamar, supra*, at *21.)

6         Plaintiffs calculated the unpaid wages due for reporting time based on the

7    data utilized by Defendant at the time of removal in May 2019. Based on

8    Albertsons' data for the Class Period for all of its non-exempt, part-time drivers,

9    Albertsons determined the total number of days each part-time driver did not work

10   during the driver's employment with Albertsons. Albertsons identified the first

11   and last date worked by each part-time driver and then determined the total

12   number of potential workdays between those two dates. From the total number of

13   potential workdays, Albertsons subtracted the dates each part-time driver worked,

14   yielding the total number of days that each part-time driver would have called into

15   work, but was not put to work. According to Albertsons' data, drivers typically

16   worked shifts of 8 hours. Albertsons then calculated that part-time drivers would

17   be entitled to 4 hours of pay (half their usual shift) every day that they call in but

18   are not put to work. (Phelps Decl., ¶ 28.)

19        Defendant asserts that the "reporting time" claims are replete with

20   deficiencies. These deficiencies include:  that there is no private right of action on

21   these claims; that Plaintiffs failed to exhaust their administrative remedies on any

22   derivative PAGA claim; that Plaintiffs' Wage Order's violation claim for

23   reporting time provision into a predictive scheduling statute fails;  that even were

24   Plaintiffs' interpretation of the Wage Order's reporting time provision to be a

25   predictive scheduling law correct, Albertsons would show it acted in "good faith"

26   reliance upon the contrary interpretation; and to the extent that Albertsons ever

27   utilized a call-in practice, it was sporadic, and inconsistently applied manager-by-

28   manager, each of whom had leeway concerning if and how they would apply any

such protocol. Defendant argued that Courts are split on whether the applicable Wage Order requires reporting time pay for situations where the employee needs to call in, and then is not needed that day, and Defendants would have presented evidence that even if these activities were work, the few minutes spent on these activities are *de minimis* - small amounts, incapable of accurate recording and compensation - and non- compensable.

Although Plaintiffs disagree with the merits of these defenses, they presented a significant risk for Plaintiffs at trial, and Plaintiffs would assume an even greater risk by continuing to litigate. The risk of changes in the law adversely affecting the interests of the class, increased costs, and expiration of a substantial amount of time, among other factors, all weigh heavily in favor of settlement. (*Rodriguez v. West*, 463 F.3d at 966.) Plaintiffs faced the risks of not prevailing on a motion for class certification, which would effectively sound the "death knell" for the litigation since the wage claims at issue would be too low for individual employees to pursue on their own. (*See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1163 (9th Cir. 2001) (explaining that "[i]f plaintiffs cannot proceed as a class, some— perhaps most—will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover.").)

In summary, although Plaintiffs believe their claims have merit, Plaintiffs nevertheless recognize that the outcome of any litigation is rarely certain. And even if Plaintiffs had prevailed, the odds of a favorable verdict being reversed on appeal are not remote enough to ignore. (*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"), *aff'd*, 440 F.2d 1079 (2d Cir. 1971); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 19 -

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1970), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd*, 409 U.S. 363 (1973) (overturning $145 million judgment after years of appeals).) Thus, after balancing the risks of continued litigation against the prospect of immediate and certain recovery from the settlement, Plaintiffs concluded that the Settlement is fair, reasonable, and adequate, and provides Class Members valuable relief for the released claims.

Based on the estimated number of California reporting time violations, which is Plaintiffs' strongest claim, the potential exposure on the reporting time California claim is approximately $5,347,308. Plaintiffs calculated these damages, by extrapolating Albertsons' data from the date of removal through the date of mediation to arrive at an estimated number of days on which reporting time pay would be owed using the average hourly rate of pay ($26.76) extrapolated from the payroll data produced. Plaintiffs estimated that there are approximately 40,000 days where reporting time wages are owed for 4 hours of pay. (Phelps Decl., ¶¶ 28-30).

Damages for the remaining claims were calculated based on the approximately 125,000 shifts reported during the Class Period. Assuming Certification of *all* claims and liability, putative Class Members suffered the following damages (excluding PAGA):

- Unpaid wages (15-minute pre-shift): $1,044,396.00

- Unpaid wages (5-min security bag check): $ 348,132.00

- Unreimbursed expenses: $ 624,452.00

- Unprovided sick leave: $1,096,198.00

- Unlawful sick leave: $ 103,871.00

- Invasion of Privacy: $3,500,000.00

- Waiting time penalties: $1,059,696.00

- Wage statement penalties: $1,218,750.00

**Total damages: $14,342,803.00 (including reporting time wages)**.

- 20 -

The $2,500,000 settlement represents 17.43% of the damages at the time of the mediation and results in a significant amount to each of the 820 Class Members with an average net payment of $1,840. (Phelps Decl., ¶¶ 30-31). This settlement falls within the range of reasonable approval. Given the uncertainties surrounding class certification and the unsettled nature of issues impacting liability in this case, this is an excellent result for the Class.

Indeed, these figures are very reasonable in light of the risks involved in this case. As this Court and other courts in the Ninth Circuit have observed, "simply because a settlement may amount to only a fraction of the potential recovery does not in itself render it unfair or inadequate. Compromise is the very nature of settlement." (*Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 624 (N.D. Cal. 1979).) In this case, Plaintiffs consider the settlement to be significantly more than a "fraction," particularly considering the various potential complications, dangers, and pitfalls that proceeding would entail.

Indeed, "[t]he determination whether a settlement is reasonable does not involve the use of a 'mathematical equation yielding a particularized sum.'" (*Frank* v. *Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005), *quoting In re Michael Milken and Assoc. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993).) Courts recognize that there is an inherent "range of reasonableness" in determining whether to approve settlement "which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." (*Id.* at 188, *quoting Newman v. Stein*, 464 F. 2d 689, 693 (2d Cir. 1972), cert denied, 409 U.S. 1039 (1972).)

District courts recognize that the reasonableness of a settlement is not dependent upon it approaching the potential recovery plaintiffs might receive if successful at trial. (*See In re Omnivision Tech., Inc.*, 559 F.Supp.2d 1036 (N.D. Cal. Jan. 9, 2008); *see also Nat'l Rural Telecomm. Coop. v. Directv, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 21 -

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1   may be acceptable even though it amounts to only a fraction of the potential

2   recovery"); *In re Global Crossing Sec. and ERISA Litig.,* 225 F.R.D. 436, 460

3   (S.D.N.Y. 2004) ("settlement amount's ratio to the maximum potential recovery

4   need not be the sole, or even dominant, consideration when assessing settlement's

5   fairness"); *In re IKON Office Solutions, Inc. Sec. Litig.,* 194 F.R.D. 166, 184 (E.D.

6   Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small

7   percentage of the most optimistic estimate does not, in itself, weigh against the

8   settlement; rather the percentage should be considered in light of strength of the

9   claims"); *Officers for Justice v. Civil Serv. Comm.,* 688 F. 2d 615, 628 (9th Cir.

10  1982) (it is "the complete package, taken as a whole rather than the individual

11  component parts, that must be examined for overall fairness").)

12      In summary, although Plaintiffs believe their claims have merit, Plaintiffs

13  nevertheless recognizes that the outcome of any litigation is rarely certain. And

14  even if Plaintiffs had prevailed, the odds of a favorable verdict being reversed on

15  appeal are not remote enough to ignore. (*West Virginia v. Chas. Pfizer & Co.*, 314

16  F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no

17  matter how confident one may be of the outcome of litigation, such confidence is

18  often misplaced"), *aff'd*, 440 F.2d 1079 (2d Cir. 1971); *Berkey Photo, Inc. v.*

19  *Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment

20  after trial); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y.

21  1970), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd*, 409 U.S. 363 (1973)

22  (overturning $145 million judgment after years of appeals).) Thus, after balancing

23  the risks of continued litigation against the prospect of immediate and certain

24  recovery from the settlement, Plaintiffs concluded that the Settlement is fair,

25  reasonable, and adequate, and provides Class Members valuable relief for the

26  released claims.

27      **B.    The Proposed PAGA Payment Is Reasonable**

28      Pursuant to the Settlement Agreement, $37,500 from the Total Settlement

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1  Amount will be paid directly to the LWDA in connection with the PAGA claim

2  asserted by the Class. (Settlement Agreement, ¶ 13.) This result was reached after

3  good-faith negotiation between the Parties. Where PAGA penalties are negotiated

4  in good faith and there is no indication that the amount was the result of self-

5  interest at the expense of other Class Members, such amounts are generally

6  considered reasonable. (*Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009

7  U.S. Dist. LEXIS 33900, at *24 (N.D. Cal. Apr. 3, 2009) (approving a PAGA

8  settlement of 0.3% or $1,500); *see also Nordstrom Com. Cases*, 186 Cal. App. 4th

9  576, 579 (2010) ("[T]rial court did not abuse its discretion in approving a

10 settlement which does not allocate any damages to the PAGA claims.").)

### C. The Proposed Payments To The Class Representatives Are Reasonable

12 Payments to named plaintiffs for their services as class representatives are

13 customary and generally approved. (*See Van Vranken v. Atl. Richfield Co.*, 901 F.

14 Supp. 294, 300 (N.D. Cal. 1995) *Cellphone Termination Fee Cases*, 186 Cal. App.

15 4th 1380, 1393 (2010); *Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715, 726

16 (2004) (upholding "service payments" to named plaintiffs for their efforts in

17 bringing the case); *Stevens v. Safeway, Inc.*, Case No. 05-01988, 2008 U.S. Dist.

18 LEXIS 17119 (C.D. Cal. Feb. 25, 2008) ($20,000 and $10,000 to two class

19 representatives); *In re Janney Montgomery Scott LLC Financial Consultant Litig.*,

20 Case No. 06-3202, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009)

21 ($20,000 each to three  class representatives).) The incentive award should be

22 approved so long as it is not so high [as] to create a conflict of interest between

23 the representative and class members, or be divorced from the actual value the

24 representative provided to the action. (*Rodriguez v. West*, 463 F.3d at 959-61.)

25 At final approval, Plaintiffs will seek Court approval of a Class

26 Representative Enhancement Payments of $15,000 each in recognition for

27 Plaintiffs' services on behalf of the Settlement Class and for the relief they

28 secured for all Class Members by way of the Settlement. The Class

- 23 -

1   Representatives here went far beyond what is typical in wage and hour class

2   actions and spent numerous hours conferring with their attorneys and doing

3   independent research. (*See* Michael Raziano Decl., ¶¶ 4-10; Chris Valdez Decl.,

4   ¶¶ 4-12.)

5   **D.   Plaintiff's Counsel's Fees And Costs Are Fair And Reasonable**

6   The Settlement parties negotiated attorney's fees of $833,333 (33% of the

7   Total Settlement Amount) and litigation costs up to the amount of $50,000, which

8   are fair and reasonable. (Settlement Agreement, ¶ 30(b).)

9   The purpose of an attorneys' fee award in class action litigation is to reward

10   counsel who took the risk of non-payment and invested in a case that achieved a

11   substantial positive result for the class. (*Ketchum v. Moses*, 24 Cal. 4th 1122,

12   1132-33 (2001).)

13   The negotiated attorneys' fees and costs are fair and reasonable, and should

14   be awarded.  In their motion for an award of attorneys' fees, Class Counsel will

15   demonstrate that the requested amount is reasonable not only based on the

16   "percentage of the fund" method, but also based the "lodestar" method. Class

17   Counsel expended substantial time and resources on this novel area of Labor Law

18   – all on a purely contingent basis – to secure compensation for the Class. The time

19   spent by Class Counsel, which will be detailed in the motion for an award of

20   attorneys' fees, will justify a fee award of $833,333[2].

21   **E.   The Proposed Class Notice Adequately Informs Class Members About the Case and Proposed Settlement**

22   The proposed notice and claims administration procedure satisfy due

23   process. Rule 23(c)(2) of the Federal Rules of Civil Procedure requires the Court

24   to direct the litigants to provide Class Members with the "best notice practicable"

25   under the circumstances, including "individual notice to all members who can be

26   identified through reasonable effort." (*Eisen v. Carlisle & Jacqueline*, 417 U.S.

27

28   [2] Class Counsels lodestar to date is $798,562.50. In accordance with this Court's standing order, a spreadsheet supporting the proposed award of attorney's fees has been emailed to the Court's Chambers.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 24 -

156, 173, 94 S. Ct. 2140, 2150, 40 L. Ed. 2d 732, 746 (1974).) Under Rule 23(c)(2), notice by mail provides such "individual notice to all members." (*Id.*) Where the names and addresses of Class Members are easily ascertainable, individual notice through the mail constitutes the "best notice practicable." (*Id.* at 175.)

The proposed Notice of Class Action Settlement ("Notice") jointly drafted and approved by the Parties provides Class Members with all required information so that each Class Member may make an informed decision regarding his or her participation in the Settlement. The Notice provides information regarding the nature of the lawsuit, a summary of the substance of the settlement terms, the class definition, the deadlines by which Class Members must submit objections or opt outs, the date for the final approval hearing, the formula used to calculate settlement payments, the Class Representative Enhancement Payment, the PAGA allocation, a statement that the Court has preliminarily approved the settlement, and a statement that Class Members will release the settled claims unless they opt out. (*See* Notice, attached as Exhibit A to the Settlement Agreement.) Accordingly, the Notice satisfies the requirements of Rule 23(c)(2).

The Parties have agreed to use Simpluris, Inc. as the Settlement Administrator. (Settlement Agreement, ¶ 31.)

## IV.   CONCLUSION

Accordingly, Plaintiffs move the Court to preliminarily approve the Settlement and direct that the Notice be mailed to Class Members. Additionally, the Parties request a Final Approval hearing be set for July 19, 2021, or the earliest subsequent available date that the Court's calendar will accommodate.

Dated: October 30, 2020

**COHELAN KHOURY & SINGER**
**THE CARTER LAW FIRM**
**THE PHELPS LAW GROUP**

By:  s/Michael D. Singer

Michael D. Singer, Esq.
Attorneys for Plaintiffs Michael Raziano,

Brian Traister, and Chris Valdez, on behalf of themselves and all others similarly situated

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

P'S & A'S ISO Plaintiffs' Motion for Preliminary Approval of Class Action Settlement
Case No. 19-CV-04373 JAK (ASx)